**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ___________

RONALD HEINBAUGH, DOUG KRUGER, and SAM ZAMBON, on behalf of themselves and all other similarly situated persons

Plaintiffs

v.

GENERAL STEEL DOMESTIC SALES, LLC d/b/a GENERAL STEEL CORPORATION, a Colorado limited liability company, JEFFREY KNIGHT, NATHAN WRIGHT, BRUCE GRAHAM, LEE BASHORE, STEVEN PAIGE, JOHN VIVIAN and JOHN DOES 1-20

Defendants

---

# CLASS ACTION COMPLAINT

---

Plaintiffs, on behalf of themselves and all other similarly situated persons who purchased or attempted to purchase a steel building from General Steel Domestic Sales, LLC d/b/a General Steel Corporation between December 7, 2004 and December 31, 2005, state as their Complaint the following:

## INTRODUCTION

General Steel Domestic Sales, LLC d/b/a General Steel Corporation ("General Steel") and its founder, owner and CEO, Jeffrey Knight ("Knight"), are infamous among their customers, their competitors and certain state attorneys general for the deceptive manner in which they have conducted, and still conduct, their business as a broker/telemarketer of steel buildings. In 2004, the Attorney General for Colorado filed an action in Jefferson County, Colorado District Court, Case No. 04cv143, against General Steel, Knight, Bruce Graham ("Graham") and other individuals employed by General Steel for multiple violations of the Colorado Consumer Protection Act. In an often-scathing opinion issued by Judge R. Brooke Jackson on December 7, 2004, Judge Jackson found General Steel and several individuals, including Knight and Graham, liable for violations of the Colorado Consumer Protection Action and entered judgment against General Steel, Knight and Graham, among others, noting generally that "there is no place in our society for the dishonesty and deception characteristic of General Steel's approach to marketing."

Ron Heinbaugh's, Doug Kruger's and Sam Zambon's dealings with General Steel occurred after the issuance of Judge Jackson's opinion, a time when General Steel supposedly had cleaned up its deceptive business practices. Unfortunately for its innocent and trusting customers, while General Steel may have made a few small changes to its business practices, its basic business plan remained focused on two overriding goals – obtain a "non-refundable" deposit from customers and never actually deliver a steel building to any customer for the price set forth in the contract. Virtually every action taken by General Steel and its officers and

employees, including those officers and employees named herein, was in furtherance of such goals. So, while General Steel may purport to have changed its shoddy and deceptive business practices in response to Judge Jackson's opinion, in reality it simply adopted and implemented new and equally deceptive practices to accomplish its goals. Ron Heinbaugh, Doug Kruger, Sam Zambon and every other member of the class of plaintiffs on whose behalf this action is brought were victims of General Steel's deception and greed. Unfortunately, each and every one of them learned the hard way that General Steel generally provides very little of anything to its customers except empty promises, excuses, frustration and grief.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Ronald Heinbaugh is an individual residing at 722 Pacific Drive, Grand Junction, Colorado 81506.

2. Plaintiff Doug Kruger is an individual residing at 4463 26th Avenue W, Seattle, WA 98199.

3. Plaintiff Sam Zambon is an individual residing at 3423 Laurel Dale Drive, Tampa, FL 33618.

4. Defendant General Steel is a Colorado limited liability company with a principal place of business at 1075 South Yukon Street, Suite 250, Lakewood, Colorado 80226. Although General Steel, at the very least, implies that it is a manufacturer of steel buildings on its website and in its radio advertising, among other places, General Steel manufactures nothing. Rather, it is a broker/telemarketer of steel buildings and its only place of business in Lakewood, Colorado consists of approximately fifty (50) salespeople/telemarketers sitting in cubes on one floor of a "boiler room" in an office building armed with nothing more than phones and notepads.

5. Defendant Knight is the owner and chief executive officer of General Steel. Upon information and belief, Knight formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Knight knew or should have known of sales practices used by salespeople working on his and General Steel's behalf.

6. Defendant Graham is the General Manager and/or the Contract Compliance Manager for General Steel. Upon information and belief, Graham formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Graham knew or should have known of sales practices used by salespeople working on his and General Steel's behalf.

7. Defendant Nathan Wright is the Vice President of Sales for General Steel and, at all times relevant hereto, was a manager in General Steel's component sales department. Upon information and belief, Wright formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Wright knew or should have known of sales practices used by salespeople working on his and General Steel's behalf.

8. Defendant John Vivian is the Vice President of Operations and Compliance Officer for General Steel. Upon information and belief, Vivian formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Vivian knew or should have known of sales practices used by salespeople working on his and General Steel's behalf.

9. Defendant Lee Bashore is a Sales Manager for General Steel. Upon information and belief, Bashore formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Bashore knew or should have known of sales practices used by salespeople working on his and General Steel's behalf.

10. Defendant Steven Paige is a Sales Manager for General Steel. Upon information and belief, Paige formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable for the deceptive trade practices and other claims alleged herein. In addition, Paige knew or should have known of sales practices used by salespeople working on his and General Steel's behalf.

11. John Does 1-20 are other manager-level employees of General Steel during the time period relevant to the allegations and claims set forth in this Complaint who, upon information and belief, formulated, controlled, directed, supervised, perpetuated, managed and had knowledge of and acquiesced in the practices and policies of General Steel to such a degree as to make them personally liable for the deceptive trade practices and other claims alleged herein. In addition, upon information and belief, such employees knew or should have known of sales practices used by salespeople working on their and General Steel's behalf.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332(d)(2) because this case is a class action, the amount in controversy exceeds $5,000,000.00 and the Plaintiff class includes citizens of states other than Colorado, which is the residence of all of the Defendants.

## CLASS ACTION ALLEGATIONS

14. This action is brought by Plaintiffs on behalf of themselves and all other similarly situated persons whose joinder in this action is impracticable because the class is so numerous. The class consists of persons who purchased or who attempted to purchase a steel building from General Steel between December 7, 2004 and December 31, 2005 pursuant to a contract that was found to be deceptive and misleading and, therefore, unenforceable. The class may number as many as one thousand individuals and entities.

15. There are questions of law or fact common to the members of the class that predominate over questions of law or fact affecting only individual members. The questions of law or fact common to all members of the class are whether Defendants used a deceptive, misleading and unenforceable contact in their transactions with class members, whether Defendants used a variety of misleading and deceptive business practices in their transactions

with class members and whether use of such contract and such business practices constitute violations of the Colorado Consumer Protection Act.

16. The claims of the named Plaintiffs are for money damages resulting from Defendants' use of misleading and deceptive business practices, which is true of the claims of the entire class, and are therefore typical of the claims of the class.

17. Plaintiffs Heinbaugh, Kruger and Zambon are representative of all persons who were materially injured by Defendants' use of misleading and deceptive trade practices, and such Plaintiffs will, as representative parties, fairly and adequately protect the interests of the class.

18. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Additionally, the prosecution of separate actions by individual members of the class would create risk of inconsistent or varying adjudications or adjudications which would not be dispositive of the interests of other members not parties to the adjudications.

## GENERAL ALLEGATIONS

19. In 2004, the Attorney General for the State of Colorado filed a lawsuit against General Steel and certain individuals seeking injunctive relief and damages under Colorado's Consumer Protection Act, Case No. 04CV143, District Court for Jefferson County, Colorado (the "AG's Case").

20. On December 7, 2004, the court in the AG's Case entered its Findings, Conclusions and Order of Judgment, a copy of which is attached hereto as Exhibit A and incorporated herein by reference. The court in the AG's Case found as follows with respect to General Steel's form of purchase order and conditions (together, the "Purchase Order"):

> The purchase order form included on its first page a checklist for various accessories, including doors and windows [citation omitted]. Invariably doors and windows, among other things, were not checked off. A customer who read the contract carefully or who was experienced in the purchase of steel buildings might understand that openings and doors and windows cost extra. However, the customer may well not understand that, as indeed several of the customers who testified at the trial did not. The salesperson's references to clearance buildings, particularly when coupled with a story about how they had been built for or returned by another customer, misled some customers into assuming that doors and windows or at least openings were included.
> …
>
> The Conditions page was almost entirely filled with single-spaced, small-font words that would take a degree of effort and determination to read and understand. Knight says that this was done simply to get everything on one page and save mailing costs. Someone who is sufficiently "sophisticated" to be spending many thousands of dollars buying a building, generally for some type of business use, can perhaps be expected to read a contract before signing it, and to ask questions about things that he does not understand. The problem here, however, is that the salesperson – again following the standards sales pitch – created a false sense of great urgency to make a decision that often overcame what might otherwise be the buyer's natural care and caution.
> …

> The purchase order form, and in particular the Conditions page, did not provide all of the terms and conditions of the sale in readable, clear and unambiguous language. This in turn contributed to the impact of the misrepresentations and omissions that support counts one through four.

21. With respect to the Purchase Order, the court in the AG's Case held as follows regarding the Attorney General's claim for injunctive relief:

> General Steel must submit to the Court within 60 days of the date of this order, after first conferring with an appropriate representative of the State, a revised form of purchase order. The current first page shall be revised so as to state in readable, clear and unambiguous language what is included and not included in the contract price. This will include, at a minimum, plain language indicating that the listed accessories and components are not included unless expressly checked off as included. The Conditions shall be set forth on separate pages. They will be set forth in a minimum 12-point font. Each separate condition (which may include more than one sentence but should be limited to one subject matter) shall be separately set forth in a numbered paragraph. There shall be a space between the numbered paragraphs. To the left of each numbered paragraph shall be placed a line for the consumer to initial that he has read, understood and accepted the condition. **No condition will be enforceable unless the consumer initials it**… (emphasis added)

22. General Steel made multiple attempts to stay the court's order regarding injunctive relief in both the District Court and the Colorado Court of Appeals. However, except for the District Court's grant of a two-week stay of the injunctive portion of the court's judgment from February 4, 2005 to February 18, 2005, all of General Steel's motions to stay were denied.

23. Accordingly, except for the two (2) week period from February 4, 2005 to February 18, 2005, since December 7, 2004, General Steel has been subject to the court's order regarding injunctive relief. Moreover, such order was never modified or limited in any respect.

24. In fact, the entirety of the court's order regarding the injunctive relief pertaining to the Purchase Order was incorporated in a Consent Decree entered in the AG's Case on March 8, 2007.

25. In disregard of the court's order regarding the Purchase Order, General Steel continued to use the Purchase Order with all of its customers from December 7, 2004 through December 31, 2005.

26. In conjunction with its use of the deceptive and misleading Purchase Order, General Steel continued to use other misleading and deceptive business practices in the ordinary course of its communications and business with its customers, including, without limitation, the following:

(i) creating a false sense of urgency for customers to sign the Purchase Order immediately by telling customers that the quoted price was only good for a limited period of time when either that was not true or the person who said it did not know whether it was true;

(ii) creating a false sense of urgency for customers to sign the Purchase Order

immediately by telling customers that the quoted price was only good for a limited period of time because the price of steel was going up when either that was not true or the person who said it did not know whether it was true;

(iii) representing to customers that they would receive certain items of value – such as engineered stamped drawings and certified blueprints - once they paid a deposit to General Steel when either that was not true or the person who said it did not know whether it was true;

(iv) representing to customers that General Steel was giving a price quote for a "complete new building" when, in fact, the price quote was for a building consisting of four walls, a roof and nothing more – no windows, no doors, no openings for windows or doors to be installed;

(v) representing to customers that they were ordering and paying a deposit for a "complete new building" when, in fact, the building was completely unusable as ordered because it had no windows, doors or openings for windows or doors;

(vi) failing to tell customers that the building for which they were given a price quote and which they ordered did not contain doors, windows or openings for doors and windows;

(vii) failing to tell customers that, if they wanted doors, windows or openings for doors and windows in their building, the price of the building set forth in the Purchase Order would double or triple;

(viii) representing to customers that, after they ordered a building, they would receive assistance from a "project coordinator," when, in fact, the "project coordinator" was just another salesperson selling "components" – doors, windows, openings for doors and windows – at inflated prices; and

(ix) representing to customers that they were being given special "direct pricing" when, in fact, every customer of General Steel received the same pricing.

27. The result of General Steel's misrepresentations was that, between December 7, 2004 and December 31, 2005, over one thousand customers, including the Plaintiffs, signed the deceptive and misleading Purchase Order pursuant to which they ordered a building that they did not want because it contained nothing more than four walls and a roof at a fictional price that did not include essential parts of a "complete new building," such as doors, windows or openings for doors or windows.

28. Another result of General Steel's misrepresentations was that, pursuant to the deceptive and misleading Purchase Order, over one thousand customers, including the Plaintiffs, paid a deposit for a building that they did not want because it contained nothing more than four walls and a roof at a fictional price that did not include essential parts of a "complete new building," such as doors, windows or openings for doors or windows.

29. Sometime after paying their deposit, customers figured out that they had just paid a deposit for a building that they did not want because it contained nothing more than four walls and a roof and that the price set forth in the Purchase Order was not the actual price of the

building they wanted because, when essential parts of a "complete new building" – such as doors, windows or openings for doors or windows – were added to the building, the price set forth in the Purchase Order often doubled or tripled.

30. At this point, customers were left with the following three (3) options:

(i) Cancel the Purchase Order and, pursuant to the Purchase Order, risk forfeiture of the deposit paid on the building and risk being sued by General Steel for additional damages;

(ii) Enter into a settlement agreement with General Steel which usually provided for the forfeiture of the deposit on the building and a release of all claims against General Steel; or

(iii) Purchase a building from General Steel for two to three times the price set forth on the Purchase Order.

31. General Steel "encouraged" its customers not to pursue claims against General Steel for keeping their deposit, to settle with General Steel and forfeit their deposit or to pay double or triple the market price for a building by threatening to sue customers for damages in addition to the amount of the customers' deposits if they cancelled the Purchase Order. Upon information and belief, between December 7, 2004 and December 31, 2005, General Steel never informed any of its customers that General Steel had used and the customer had executed a Purchase Order that was unenforceable pursuant to the court's order in the AG's case or, that by continuing to use such Purchase Order following entry of the court's order in the AG's case, General Steel was misleading and deceiving its customers.

32. Upon information and belief, between December 7, 2004 and December 31, 2005, nearly one-half of customers who ordered a building from General Steel chose either to cancel the Purchase Order or to enter into a settlement agreement with General Steel. Upon information and belief, in virtually every one of these cases, General Steel refused to return the customers' deposits to them.

33. Upon information and belief, between December 7, 2004 and December 31, 2005, the other one-half of customers who ordered a building from General Steel chose to purchase a building and pay double or triple the market price for the building because they did not want to forfeit their deposit or be sued by General Steel for damages in addition to the amount of the deposit.

## CLAIMS FOR RELIEF

### I. DECLARATORY RELIEF – ENFORCEABILITY OF TERMS AND CONDITIONS OF PURCHASE ORDER

34. The allegations contained in paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35. In its December 7, 2004 order, the court in the AG's Case ruled that no condition in the Purchase Order would be enforceable unless the customer initialed it.

36. Between December 7, 2004 and December 31, 2005, General Steel used the same

form of Purchase Order that the court in the AG's case found to be misleading and deceptive. Such Purchase Order did not provide for General Steel's customers to initial its terms and conditions.

37. Upon information and belief, between December 7, 2004 and December 31, 2005, General Steel did not request that its customers initial the terms and conditions of the Purchase Order, and, in fact, General Steel's customers, including the Plaintiffs, did not initial the terms and conditions of the Purchase Order.

38. Accordingly, the Plaintiffs are entitled to a declaratory judgment pursuant to F.R.C.P. 57 that each and every term and condition contained in General Steel's Purchase Orders executed by a customer between December 7, 2004 and December 31, 2005 that was not initialed by the customer is unenforceable, including, without limitation, those terms and conditions providing for the forfeiture of the deposit in the event the Purchase Order is cancelled and requiring disputes related to the Purchase Order to be arbitrated.

## II. DECLARATORY RELIEF – ENFORCEABILITY OF SETTLEMENT AGREEMENTS RESULTING FROM CANCELLATION OF PURCHASE ORDERS

39. The allegations contained in paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40. In its December 7, 2004 order, the court in the AG's Case ruled that no condition in the Purchase Order would be enforceable unless the customer initialed it.

41. Between December 7, 2004 and December 31, 2005, General Steel used the same form of Purchase Order that the court in the AG's case found to be misleading and deceptive. Such Purchase Order did not provide for General Steel's customers to initial its terms and conditions.

42. Upon information and belief, between December 7, 2004 and December 31, 2005, General Steel did not request that its customers initial the terms and conditions of the Purchase Order, and, in fact, General Steel's customers, including the Plaintiffs, did not initial the terms and conditions of the Purchase Order.

43. With knowledge that certain terms and conditions of the Purchase Order were unenforceable pursuant to the court's order in the AG's case, General Steel nonetheless persuaded certain of its customers to release their claims against General Steel under the threat that, if they did not, General Steel would attempt to enforce certain unenforceable terms and conditions of the Purchase Order against them.

44. Accordingly, the Plaintiffs are entitled to a declaratory judgment pursuant to F.R.C.P. 57 that each and every settlement agreement entered into by a customer of General Steel based on General Steel's threat to enforce against the customer unenforceable terms and conditions of the customer's Purchase Order are void and of no force or effect.

## III. BREACH OF CONTRACT

45. The allegations contained in paragraphs 1 through 44 are incorporated by reference as if fully set forth herein.

46. Under its Purchase Orders with Plaintiffs and all of its other customers from December 7, 2004 to December 31, 2005, General Steel was required to deliver the "complete new building" ordered by the customer for the price set forth on the Purchase Order.

47. In addition, under its Purchase Orders with Plaintiffs and all of its other customers from December 7, 2004 to December 31, 2005, General Steel was required to deliver certain items of value, such as drawings and blueprints, to its customers following the customers' payment of a deposit to General Steel.

48. Plaintiffs and all of General Steel's other customers from December 7, 2004 to December 31, 2005 complied with their obligations under the Purchase Orders by paying a deposit to General Steel.

49. General Steel breached the Purchase Orders with Plaintiffs and all of its other customers from December 7, 2004 to December 31, 2005 by refusing and failing to deliver the "complete new buildings" ordered by its customers for the price set forth on the Purchase Order and by refusing and failing to deliver certain items of value, such as drawings and blueprints, to its customers following payment of a deposit.

50. As a result of General Steel's material breach of the Purchase Orders with Plaintiffs and all of its other customers from December 7, 2004 to December 31, 2005, all of the customers, including Plaintiffs, were entitled to terminate the Purchase Order and to obtain a refund of their deposits.

51. Alternatively, all of the customers were entitled to delivery of the building they ordered, or thought they ordered, for the price set forth on the Purchase Order.

52. General Steel refused to refund deposits to Plaintiffs and other customers from December 7, 2004 to December 31, 2005 despite termination of the Purchase Orders by such customers. Alternatively, General Steel refused to deliver "complete new buildings" to its customers for the price set forth on the Purchase Order.

53. As a result of General Steel's breach of the Purchase Orders with Plaintiffs and other customers from December 7, 2004 to December 31, 2005, such customers have been damaged in the amount of their lost deposits or the difference between the price paid for the building they received and the price set forth on the Purchase Order for the building.

## IV. CIVIL THEFT

54. The allegations contained in paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

55. General Steel received deposits and other payments from Plaintiffs and other customers from December 7, 2004 to December 31, 2005.

56. General Steel failed to perform its obligations under the Purchase Orders with its customers.

57. As a result of General Steel's failure to perform its obligations under the Purchase Orders with its customers, such customers either terminated the Purchase Orders and demanded the return of their deposits or paid significantly more for their buildings than the price

set forth on their Purchase Orders.

58. General Steel was not authorized by its customers to keep their deposits when it never delivered a building to them.

59. General Steel was not authorized by its customers to keep their significant overpayments for buildings delivered to them by General Steel.

60. General Steel has knowingly kept and exercised control over its customers' deposits and overpayments.

61. By keeping and exercising control over its customers' deposits and overpayments, General Steel intended to permanently deprive, and has permanently deprived, its customers of the use and benefit of such funds.

62. Upon information and belief, General Steel has knowingly used its customers' deposits and overpayments so as to permanently deprive its customers of the use and benefit of such funds.

63. Because General Steel has intentionally, knowingly and permanently deprived its customers of the use and benefit of the customers' funds, Plaintiffs, on behalf of themselves and all similarly situated customers, are entitled to treble damages, costs and attorneys' fees pursuant to C.R.S. § 18-4-405.

## V. CONVERSION

64. The allegations contained in paragraphs 1 through 63 are incorporated by reference as if fully set forth herein.

65. General Steel received deposits for buildings ordered by Plaintiffs and other customers between December 7, 2004 and December 31, 2005.

66. General Steel failed to perform under the Purchase Orders with such customers.

67. As a result of General Steel's failure to perform under the Purchase Orders, Plaintiffs and other customers terminated the Purchase Orders and demanded the return of their deposits.

68. General Steel failed and refused to return such deposits.

69. Upon information and belief, General Steel has taken dominion over such deposits.

## VI. VIOLATION OF COLORADO CONSUMER PROTECTION ACT

70. The allegations contained in paragraphs 1 through 69 are incorporated by reference as if fully set forth herein.

71. In its business dealings with Plaintiffs and all of its other customers from December 7, 2004 to December 31, 2005, General Steel, Knight, Wright, Graham, Bashore, Vivian, Paige and John Does 1-20 engaged in unfair and deceptive trade practices, as defined

under C.R.S. § 6-1-101, *et seq.*, by using the Purchase Order which had been found to be misleading and deceptive and certain terms of which were unenforceable, by misleading Plaintiffs and other customers as to the price of the buildings they ordered or thought they ordered and by failing to disclose to Plaintiffs and other customers material information regarding the buildings, including, without limitation, the price of the buildings and the items included with the buildings.

72. Defendants engaged in unfair and deceptive trade practices in the course of their business of selling steel buildings.

73. Defendants' actions impact the potential and actual consumers of its products and services, including Plaintiffs.

74. Plaintiffs and other similarly situated customers have been injured by Defendants' unfair and deceptive trade practices by entering into the Purchase Orders, by paying General Steel deposits for buildings they never received and/or by paying double or triple the market price for buildings they did receive.

75. Plaintiffs' injuries and the injuries of other similarly situated customers are a direct and proximate result of Defendants' unfair and deceptive trade practices.

## VII. FRAUD IN THE INDUCEMENT

76. The allegations contained in paragraphs 1 through 75 are incorporated by reference as if fully set forth herein.

77. Defendants made material misrepresentations to Plaintiffs and other similarly situated customers between December 7, 2004 and December 31, 2005 as to, among other things, the building such customers were ordering, the building on which price quotes were given, the building identified on the Purchase Orders and what was included for the price set forth on the Purchase Orders. Additionally, Defendants used the deceptive and misleading Purchase Order to induce Plaintiffs and their other customers to sign the Purchase Orders.

78. When Defendants made such misrepresentations, they knew or should have known that such misrepresentations were false or they were aware that they did not know whether such misrepresentations were true or false.

79. Upon information and belief, Defendants made misrepresentations to Plaintiffs and their other customers with the intent that such customers would rely on the misrepresentations.

80. Plaintiffs and Defendants' other customers justifiably relied on Defendants' misrepresentations.

81. As a result of justifiably relying on Defendants' misrepresentations, Plaintiffs and all other similarly situated customers suffered damages in an amount to be proven at trial.

## JURY DEMAND

82. Pursuant to F.R.C.P. 38(a), contemporaneously with the filing of this Class Action Complaint, Plaintiffs will file and serve on Defendants a demand for trial by jury of all claims asserted herein except for Plaintiffs' two claims for declaratory relief.

**EXEMPLARY DAMAGES**

83. Pursuant to C.R.S. § 13-21-102, Plaintiffs reserve the right to amend this Class Action Complaint to include a claim for exemplary damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, for themselves and other similarly situated persons, request entry of judgment against Defendants in the amount of their actual damages, additional and exemplary damages as appropriate and/or allowed by law, interest as prescribed by law, costs and attorneys' fees as prescribed by law, and such other and further relief to which Plaintiffs may be justly entitled.

DATED this 7th day of December, 2007.

GRANT LAW PC

By: /s/Paul M. Grant

Paul M. Grant (#26517)
Grant Law PC
29713 Troutdale Scenic Dr., #2C
Evergreen, CO 80439
Telephone: (303) 531-6848
Fax: (303) 526-9175
pgrant@grantlawpc.com

THE STARR LAW FIRM, P.C.
Todd M. Starr (#27641)
112 W. Montezuma, Suite 4
Cortez, CO 81321
Telephone: (970) 565-8581
Fax: (970) 565-3836

ATTORNEYS FOR PLAINTIFFS

**EXHIBIT A**

**DECEMBER 7, 2004 ORDER**